STATE of Minnesota, petitioner,
Appellant,

v.

Edgar Randolph HUGHES,
Jr., Respondent.

No. A07–37.

Court of Appeals of Minnesota.

Dec. 18, 2007.

Lori Swanson, Attorney General, St. Paul, MN and James C. Backstrom, Dakota County Attorney, Amy A. Schaffer, Assistant County Attorney, Hastings, MN, for appellant.

John M. Stuart, State Public Defender, Michael W. Kunkel, Assistant Public Defender, Minneapolis, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; SHUMAKER, Judge; and HUSPENI, Judge.[*]

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

SHUMAKER, Judge.

The district court granted respondent's petition for postconviction relief, ruling that, because the amount of restitution he was ordered to pay remained an appealable issue at the time *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), was decided, he is entitled to the retroactive application of *Blakely*, even though his conviction had become final and all time for appeal or for a certiorari petition had expired before that decision. Because finality is determined by the date of the entry of the final judgment of conviction, respondent is not entitled to the retroactive application of *Blakely*, and we reverse.

## FACTS

On three occasions in June and July of 2003, respondent Edgar Randolph Hughes, Jr., robbed West St. Paul businesses at gunpoint.

After the state charged him with three counts of aggravated robbery in the first degree, Hughes agreed to a plea bargain by which he would plead guilty to one count; the other two counts would be dismissed; he would pay restitution on all three counts; and he would be sentenced to imprisonment for 240 months under the dangerous-offender statute, Minn.Stat. § 609.1095, subd. 2 (2002). The prison term was an upward durational departure from the presumptive sentence of 108 months and was based on Hughes's prior criminal-history score of 21, which included convictions of at least two violent crimes prior to the crime for which he was being sentenced.

Minn. Const. art. VI, § 10.

In pronouncing the sentence on March 19, 2004, the court indicated, "If there is any restitution, it may be determined by [c]ommunity [c]orrections...." On June 22, 2004, the court ordered Hughes to pay restitution of $634.99.

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The Supreme Court applied the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requiring any fact that allows a sentence to be increased beyond the statutory maximum to be decided by a jury. *Blakely*, 542 U.S. at 301, 124 S.Ct. at 2536. Then the Court defined the "statutory maximum" to be "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" without any additional findings of fact. *Id.* at 303, 124 S.Ct. at 2537 (emphasis omitted). Thus, under *Blakely*, the "statutory maximum" sentence in Minnesota is the presumptive sentence prescribed by the Minnesota Sentencing Guidelines. *State v. Shattuck*, 704 N.W.2d 131, 141 (Minn. 2005).

Hughes filed a petition for postconviction relief on August 11, 2006, contending that he is entitled to the application of the *Blakely* rule. The state opposed the petition on the ground that *Blakely* does not apply retroactively to Hughes's sentence.

Ruling that Hughes still could have directly appealed his sentence as of the date of the *Blakely* decision, the district court granted the petition. The state brought this appeal.

## ISSUE

On March 19, 2004, the district court entered a judgment of criminal conviction and imposed a sentence of imprisonment and restitution, the amount of which was to be determined. The court entered an order determining the amount of restitution on June 22, 2004. *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), was decided on June 24, 2004. The district court ruled, in response to respondent's petition for postconviction relief, that because the restitution issue was appealable as of the date of *Blakely*, respondent is entitled to the retroactive application of *Blakely*.

Did the district court err in its ruling?

## ANALYSIS

 We review decisions of a postconviction court for an abuse of discretion. *Hale v. State*, 566 N.W.2d 923, 926 (Minn. 1997). We will sustain the postconviction court's factual findings if they are supported by sufficient evidence in the record. *Cuypers v. State*, 711 N.W.2d 100, 103 (Minn.2006). But we review legal issues de novo. *Id.* "Whether *Blakely* applies retroactively ... is a purely legal issue which [we] review de novo." *State v. Houston*, 702 N.W.2d 268, 270 (Minn.2005). A postconviction court abuses its discretion if it misapplies the law. *State v. Babcock*, 685 N.W.2d 36, 40 (Minn.App.2004), *review denied* (Minn. Oct. 19, 2004). There is no dispute that the sentencing court imposed a sentence that exceeded the statutory maximum sentence and that the court did so without submitting any departure fact to a jury. It is precisely this type of judicial sentencing departure that *Blakely* addresses. But the question is whether *Blakely* applies retroactively to Hughes's sentence, as the postconviction court held.

 *Blakely* applies retroactively only to cases pending on direct review at the time the decision was issued, namely, June 24, 2004. *State v. Osborne*, 715 N.W.2d 436, 441 (Minn.2006). "[A] case is pending until such time as the availability of direct

appeal has been exhausted, the time for a petition for certiorari has elapsed or a petition for certiorari with the United States Supreme Court has been filed and finally denied." *O'Meara v. State*, 679 N.W.2d 334, 336 (Minn.2004).

The event that triggers the running of the time for appeal or petition for certiorari is the entry of a final judgment, which occurs when "there is a judgment of conviction upon the verdict of a jury or the finding of the court, and sentence is imposed or the imposition of sentence is stayed." Minn. R.Crim. P. 28.02, subd. 2(1). The parties agree that a defendant has 90 days from the entry of final judgment to take a direct appeal. Minn. R.Crim. P. 28.02, subd. 4(3) (regarding procedure for appeals other than sentence appeals); Minn. R.Crim. P. 28.05, subd. 1(1) (regarding appeals from sentences imposed or stayed); *Osborne*, 715 N.W.2d at 441.

■ The state argues that final judgment was entered on March 19, 2004, when the court imposed the 240–month prison term and the restitution obligation, even though the amount of restitution had not yet been determined. If the state is correct, the 90–day period for direct appeal or the filing of a petition for certiorari expired on June 17, 2004, before the release of the *Blakely* decision. Hughes contends that the judgment was not final until June 22, 2004, the date the restitution amount was ordered, and that the 90–day period runs from that date.

Hughes argues that a criminal sentence is not final until all of its terms are pronounced with specificity, that restitution is itself a criminal sentence, and that the adoption of the state's position would violate the policy against allowing piecemeal appeals. Furthermore, he argues, he could not have meaningfully appealed his restitu-

tion order before he knew what his obligation was.

Neither party has cited any authority that definitively resolves the issue raised in this appeal. The appellant in *State v. Losh* argued that the finality of a sentence was pivotal to a proper application of the retroactivity rule, but, because of the procedural posture of that case, the supreme court said, "[W]e need not reach the questions of whether 'finality of the sentence' (as opposed to 'finality of the conviction') is ever the touchstone for determining retroactive effect and whether or not some methods of review of a sentence qualify as 'direct review.'" 721 N.W.2d 886, 894 (Minn.2006)

Hughes is correct that "payment of court-ordered restitution" is part of a criminal "sentence." Minn.Stat. § 609.10, subd. 1(5) (2004). He is also correct that the adoption of the state's argument can result in piecemeal appeals. Nevertheless, we reject his assertion that his judgment was not final until the specific amount of restitution was fixed for two interrelated reasons: The overriding principle of finality, which is at the core of retroactivity jurisprudence, coupled with the procedural protection of Minn.Stat. § 611A.045, subd. 3(b) (2004), which allows an offender to challenge a restitution order after the amount is determined, convinces us that Hughes is not entitled to the retroactive application of *Blakely*.

■ There is no dispute that, on March 19, 2004, the court entered a final judgment of conviction and sentence of incarceration. The record also shows that the court ordered restitution, to be determined by the community corrections department. Only the specific amount of restitution was left undetermined. Noting the critical importance of finality in criminal justice, the United States Supreme Court explained: "Application of constitutional rules not in

existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane,* 489 U.S. 288, 309, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989). Finality of *conviction* seems to be the touchstone for the application of retroactivity rules, and we so hold. We also note that, in virtually all cases, the judgment of conviction and the sentence are contemporaneous, except for restitution.

Restitution is a sufficiently sui generis issue that it warranted special statutory treatment. "An offender may challenge restitution, but must do so by requesting a hearing within 30 days of receiving written notification of the amount of restitution requested, or within 30 days of sentencing, whichever is later." Minn.Stat. § 611A.045, subd. 3(b). It is evident that the legislature recognized both that the amount of restitution is not always necessarily known at the time of the entry of a judgment of conviction and the imposition of the rest of the sentence, and that the restitution obligation itself remains inchoate until the specific amount is determined. To guard against the absurd predicament of allowing appeal time to run (from the final judgment of conviction) as to restitution before the amount is known, the legislature provided this special statutory protection.

■ Thus, we hold that, for purposes of applying retroactivity rules, a criminal case is finally determined when a judgment of conviction has been entered, and that, if restitution is a part of the sentence, the fact that the amount of restitution has not been determined when a judgment of conviction is entered will not prevent that judgment from being deemed final. The district court erred in holding otherwise.

### DECISION

For purposes of applying retroactivity rules, a criminal conviction is deemed final when a judgment of conviction is entered even if the precise amount of restitution, which is a part of the sentence, has not been determined as of the date of the entry of that judgment.

**Reversed.**